Edward O. Sassower, P.C. (*pro hac vice* admission pending)
Joshua A. Sussberg, P.C.
Brian E. Schartz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Justin R. Bernbrock (*pro hac vice* admission pending)
Benjamin M. Rhode (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Co-Counsel to the Debtors*

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| PENN VIRGINIA CORPORATION, *et al.*,[1] | ) | Case No. 16-32395 (___) |
| Debtors. | ) | (Joint Administration Requested) |

# DEBTORS' MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Penn Virginia Corporation (4320); Penn Virginia Holding Corp. (7384); Penn Virginia MC Corporation (0458); Penn Virginia MC Energy L.L.C. (0462); Penn Virginia MC Operating Company L.L.C. (0466); Penn Virginia Oil & Gas Corporation (7929); Penn Virginia Oil & Gas GP LLC (3686); Penn Virginia Oil & Gas LP LLC (8109); Penn Virginia Oil & Gas, L.P. (9487). The location of the Debtors' service address is: Four Radnor Corporate Center, Suite 200, 100 Matsonford Road, Radnor, Pennsylvania 19087.

Penn Virginia Corporation ("Penn Virginia") and its debtor affiliates, as debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "Debtors"),[2] respectfully state the following in support of this motion:

## Relief Requested

1. The Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (respectively, the "Interim Order" and "Final Order"): (a) authorizing, but not directing, the Debtors (i) to pay prepetition wages, salaries, reimbursable expenses, and director obligations in an aggregate amount up to $589,452 pursuant to the Interim Order and $2,796,452 pursuant to the Final Order and (ii) to continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto; and (b) granting related relief. In addition, the Debtors request that the Court schedule a final hearing within approximately 25 days of the commencement of these chapter 11 cases to consider approval of this motion on a final basis.

## Jurisdiction and Venue

2. The United States Bankruptcy Court for the Eastern District of Virginia (the "Court") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

3. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4. The bases for the relief requested herein are sections 105(a), 362(d), 363(b), and 507(a) of title 11 of the United States Code the Bankruptcy Code, Rules 6003 and 6004 of the

[2] A detailed description of the Debtors and their businesses, and the facts and circumstances supporting this motion and the Debtors' chapter 11 cases, are set forth in greater detail in the *Declaration of R. Seth Bullock, Chief Restructuring Officer of Penn Virginia Corporation, in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed contemporaneously with the Debtors' voluntary petitions for relief filed under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), on May 12, 2016 (the "Petition Date").

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Rule 9013-1 of the Local Rules of the United States Bankruptcy Court for the Eastern District of Virginia (the "Local Bankruptcy Rules").

**The Debtors' Workforce**

5. The Debtors' employees, independent contractors, and temporary staff perform a wide variety of functions critical to the administration of these chapter 11 cases and the Debtors' successful reorganization. Their skills, knowledge, and understanding of the Debtors' operations and infrastructure are essential to preserving operational stability and efficiency. In many instances, the Debtors' employees, independent contractors, and temporary staff include highly trained personnel who are not easily replaced. Without the continued, uninterrupted services of their employees, independent contractors, and temporary staff the Debtors' reorganization efforts will be halted.

6. The vast majority of employees rely exclusively on their compensation and benefits to pay their daily living expenses and support their families. Thus, employees will be exposed to significant financial constraints if the Debtors are not permitted to continue paying their compensation, providing benefits, maintaining existing programs, and making severance payments, as applicable. Consequently, the relief requested is necessary and appropriate.

7. The Debtors employ approximately 96 individuals on a full-time basis (the "Employees"). Approximately 28 Employees are paid on an hourly basis and approximately 68 receive a salary. The Debtors do not employ any Employees on a part-time basis, nor do any Employees receive a commission in addition to their base salary. None of the Employees are represented by a union or collective bargaining unit. In addition to the Employees, the Debtors also retain from time to time specialized individuals as independent contractors (the "Independent Contractors") to complete discrete projects, as well as temporary workers (the

"Temporary Staff") from several staffing agencies (collectively, the "Staffing Agencies") to complete certain discreet projects on a short-term basis. The Debtors maintain Master Service Agreements with several staffing agencies (collectively, the "Staffing Agencies"), through which the Debtors hire various Temporary Staff. The Debtors currently retain approximately 12 Independent Contractors and three Temporary Staff, although these numbers fluctuate based on the Debtors' specific needs at any given time. The Independent Contractors and Temporary Staff are an important supplement to the efforts of the Debtors' Employees.

**Employee, Independent Contractor, and Temporary Staff Compensation and Benefits**

8. The Debtors seek to minimize the personal hardship the Employees would suffer if Employee obligations are not paid when due or as expected. The Debtors are seeking authority to pay and honor certain prepetition claims relating to, among other things, wages, salaries, expense reimbursements, director obligations, other compensation, payroll services, federal and state withholding taxes and other amounts withheld (including garnishments, Employees' share of insurance premiums, taxes, and 401(k) plan contributions), health insurance, retirement benefits, paid time off, other paid leave, unpaid leave, life and accidental death and dismemberment insurance, short- and long-term disability coverage, employee assistance, and other benefits that the Debtors have historically directly or indirectly provided to the Employees in the ordinary course of business (collectively, the "Employee Compensation and Benefits"). In addition, the Debtors also are seeking to pay all costs incident to the Employee Compensation and Benefits.

9. With the Court's approval of the relief requested herein, the Debtors intend to continue their prepetition Employee Compensation and Benefits programs in the ordinary course of business. Out of an abundance of caution, the Debtors request the right to modify, change, and discontinue any of their Employee Compensation and Benefits and to implement new

programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law.

10. By this Motion, the Debtors seek authority to make the following payments related to prepetition amounts owed on account of the Employee Compensation and Benefits:

| Employee Obligation | Interim Amount | Final Amount |
|---|---|---|
| Unpaid Wages | $161,000 | $161,000 |
| Unpaid Contractor Amounts | $48,000 | $48,000 |
| Deductions | $402 | $402 |
| Unpaid Payroll Taxes | $56,000 | $56,000 |
| Payroll Fees | $0 | $0 |
| Retiree Compensation | $0 | $0 |
| Corporate Credit Card Balances | $58,000 | $58,000 |
| Expense Reimbursements | $0 | $32,000 |
| Health Insurance Programs | $2,750 | $2,750 |
| Life and AD&D Insurance | $0 | $0 |
| Disability Benefits | $0 | $0 |
| 401(k) Plan | $20,600 | $87,600[3] |
| Paid Leave[4] | $242,000 | $242,000 |
| Director Compensation | $0 | $108,000[5] |
| Vehicle Allowance | $0 | $0 |
| Matching Gifts Amounts | $700 | $700 |
| Severance Program and Non-Insider Bonus Program | $0 | $2,000,000[6] |
| **Total** | **$589,452** | **$2,796,452** |

[3] Approximately $67,000 is related to the Annual Contributions, as defined herein, which are not due and payable until February 2017.

[4] The Paid Leave obligation only requires cash payment with respect to each Employee's owed Paid Leave when an Employee is terminated.

[5] This is the estimated amount for the second quarter of 2016. Director Compensation will be paid approximately one week after the end of the quarter.

[6] This figure excludes related payroll taxes.

Amounts owed to certain individuals on account of the Employee Compensation and Benefits may exceed $12,850. For the avoidance of doubt, the Debtors do not seek authority to pay any amounts in excess of $12,850 pursuant to the Interim Order. Nevertheless, given the significant role that these individuals play in supporting the Debtors' operations, the Debtors do seek authority, solely pursuant to the Final Order, to pay certain prepetition amounts owed on account of the Employee Compensation and Benefits in excess of $12,850.

**I. Compensation and Withholding Obligations.**

**A. Unpaid Wages.**

11. The Debtors pay the Employees' wages, salaries, and other compensation on a biweekly basis (collectively, the "Employee Compensation"). The Debtors pay their Employees' wage and salary obligations (the "Wages") on either a salaried or hourly basis. The Employees receive approximately $474,000 in the aggregate on a biweekly basis, but historically accrue, on average, approximately $12,000 in additional overtime pay on a biweekly basis due to the nature of the Debtors' businesses and operations. The Debtors expect this pattern to continue postpetition. Because the hourly Employees are paid in arrears, certain hourly Employees may be owed accrued but unpaid Wages as of the Petition Date. Wages also may be due and owing as of the Petition Date because of, among other things, potential discrepancies between the amounts paid and the amounts that Employees believe should have been paid, which, upon resolution, may reveal that additional amounts are owed to such Employees.

12. As of the Petition Date, the Debtors estimate that Employees are owed an aggregate of approximately $161,000 on account of accrued wages, salaries, overtime, and other compensation (excluding reimbursable expenses, paid time off, and amounts related to the 401(k) plan) earned before the Petition Date ("Unpaid Wages"). The Debtors seek authority, pursuant to both the Interim Order and the Final Order, to pay their Employees any Unpaid

Wages in the ordinary course of business and consistent with past practice, and to continue the Wages practices on a postpetition basis in the ordinary course of the Debtors' business.

**B. Independent Contractors and Temporary Staff Compensation.**

13. The Debtors rely on approximately 12 Independent Contractors and three Temporary Staff in the ordinary course of their business. The Debtors pay the Independent Contractors directly for their services. The Debtors pay the Staffing Agencies for the services of the Temporary Staff and the Staffing Agencies pay the Temporary Staff accordingly. These Independent Contractors and Temporary Staff perform a wide range of services critical to the Debtors' operations, including, among other things, providing drilling, completion and supervision services. The Employees rely on the support of Independent Contractors and Temporary Staff to complete discrete projects in furtherance of the Debtors' businesses. These projects last from two weeks to several months. The Debtors believe the authority to continue paying their Independent Contractors and Temporary Staff is important to minimizing disruption of the Debtors' continued business operations. On average for the four months preceding the Petition Date, the Debtors spent approximately $400,000 on Independent Contractors and Temporary Staff on a monthly basis.

14. As of the Petition Date, the Debtors estimate that Independent Contractors and Temporary Staff are owed an aggregate of approximately $48,000 on account of accrued services rendered prior to the Petition Date (the "Unpaid Contractor Amounts"). The Debtors seek authority to pay any Unpaid Contractor Amounts owed on account of services already rendered in the ordinary course of the Debtors' business.

**C. Withholding Obligations.**

15. During each applicable pay period, the Debtors routinely deduct certain amounts from Employees' paychecks, including, garnishments, child support, and other pre-tax

deductions payable pursuant to certain of the Health and Welfare Programs (as defined below) (collectively, the "Deductions"). Some of the Deductions are forwarded to various third-party recipients. As of the Petition Date, the Debtors estimate that the aggregate amount of accrued but unpaid Deductions is $402.

16. The Debtors also are legally required to withhold from the Employees' Compensation amounts related to, among other things, federal, state, and local income taxes as well as Social Security and Medicare taxes (collectively, the "Employee Payroll Taxes") for remittance to the appropriate federal, state, and local taxing authorities. The Debtors must then match the Employee Payroll Taxes from their own funds and pay, based upon a percentage of gross payroll, additional amounts for state and federal unemployment insurance (the "Employer Payroll Taxes," and together with the Employee Payroll Taxes, the "Payroll Taxes"). The Payroll Taxes generally are processed and forwarded to the appropriate federal, state, or local taxing authority at the same time Employees' payroll checks are disbursed. As of the Petition Date, the Debtors estimate that the aggregate amount of accrued but unpaid Payroll Taxes is approximately $56,000.

17. As of the Petition Date, the Debtors estimate that the aggregate amount of accrued but unpaid Deductions and Payroll Taxes (together, the "Withholding Obligations") is approximately $56,402. The Debtors seek authority, pursuant to the Interim Order and the Final Order, to pay in a manner consistent with historical practice any unpaid Withholding Obligations and to continue to honor the Withholding Obligations in the ordinary course of business during the administration of these chapter 11 cases.

**D. Retiree Compensation.**

18. In the 1990s, it was the Debtors' common practice to offer retirees approximately $1,500–$2,000 per month as a retiree benefit (the "Retiree Compensation"). These obligations

are paid out of the Debtors' assets and are not paid pursuant to the Employee Retirement Income Security Act of 1974. The Debtors have binding contracts with certain retirees to continue paying these obligations for the life of the retiree and, in some cases, upon the death of the retiree, to the retiree's spouse or other designated beneficiary for the remainder of his or her life. In aggregate, the Debtors pay approximately $14,000 per month to retirees on account of Retiree Compensation. As of the Petition Date, the Debtors do not believe any amounts are owed on account of Retiree Compensation. The Debtors seek authority, pursuant to the Interim Order and the Final Order, to pay in a manner consistent with historical practice the Retiree Compensation in the ordinary course of business during the administration of these chapter 11 cases.

**E. Payroll Processing.**

19. The Debtors utilize Paycor, Inc. ("Paycor"), a third-party payroll service, to process and administer their Payroll.[7] The Debtors estimate that they will pay approximately $2,000 per month to Paycor on account of the payroll-related services that it provides to the Debtors and related administrative costs (collectively, the "Payroll Fees"). As of the Petition Date, the Debtors do not believe any amounts are owed to Paycor on account of Payroll Fees. Failure to pay the Payroll Fees in the future could lead to delayed disbursement of the Employees' payments, to the detriment of the Employees and, likely, the Debtors' operations. As a result, the Debtors seek to continue administering payroll in the ordinary course of business.

**F. Corporate Credit Card.**

20. The Debtors provide business credit cards (the "P-Cards") to certain field employees for business expenses such as fuel, truck-parts, batteries, and rope that Employees

---

[7] Until May 5, 2016, the Debtors utilized ADP, LLC ("ADP") to process and administer payroll. The Debtors paid approximately $4,000 per month to ADP on account of the payroll-related services. Because ADP was discontinuing support to the Debtors' ADP software without an additional cash outlay and Paycor provided a cheaper alternative, the Debtors switched to Paycor. The Debtors do not believe any amounts are owed to ADP on account of previous payroll related services.

purchase, as needed, at work-sites. Some corporate employees also use P-Cards for office supplies and other corporate expenses. There are currently 46 P-Cards in active use among the Debtors' Employees. One Employee uses a corporate SunTrust card (the "SunTrust Card" and collectively with the P-Cards, the "Corporate Credit Cards"). The Corporate Credit Cards streamline the reimbursement process for the Debtors, allowing the Debtors to make two credit card payments monthly instead of issuing personal reimbursements to multiple employees for these required expenses. Additionally, the Corporate Credit Cards minimize any burdens that might be placed on employees who do not have the resources to use personal credit cards and seek later reimbursement. The P-Cards are issued by Bank of America ("BoA") and the SunTrust Card is issued by SunTrust Bank ("SunTrust"). The Corporate Credit Cards are issued in the name of the Debtors, making the Debtors liable for payments.

21. In the aggregate, the average monthly expense accrued on the Corporate Credit Cards is around $44,000 (the "Corporate Credit Card Balances"). It is the Debtors' customary business practice to pay BoA and SunTrust their respective share of the Corporate Credit Card Balances on or before the monthly due date in order to avoid additional interest expenses or an interruption to the Corporate Credit Card programs.

22. Prior to the filing of these chapter 11 cases, BoA issued the Debtors a letter of intent to terminate the P-Card service due to the potential chapter 11 filing, indicating that it would not provide the Debtors with postpetition credit. BoA's cancellation of the P-Cards would be a substantial burden on the Debtors because, as described above, the P-Cards streamline the reimbursement process. Furthermore, many of the Employees lack the financial wherewithal to advance these costs themselves and wait for the Debtors to reimburse them. Therefore, on March 14, 2016, the Debtors and BoA entered into a secured business charge account agreement

providing for payments of charges through automatic debits (the "Agreement") with BoA, with all amounts advanced by BoA under the Agreement to be secured by a cash deposit provided by the Debtors in the amount of $126,000[8] (the "Deposit").

23. The Debtors submit that it is an exercise of their sound business judgment to enter into the Agreement and post the Deposit. As described above, BoA had advised the Debtors that it would not provide further credit to the Debtors without the Agreement and failure to enter into the Agreement and post the Deposit would have resulted in a substantial disruption of the Debtors' business operations.

24. As of the Petition Date, the Debtors believe that they owe, in aggregate, approximately $58,000 to BoA and SunTrust on account of the Corporate Credit Card Balances. Failure to continue paying the Corporate Credit Card Balances as they come due could result in unnecessary interest expenses and a disruption of the Debtors' operations. As a result, the Debtors seek authority to continue paying the P-Card and SunTrust balances on a monthly basis in the ordinary course of business.

25. Further, in order to avoid additional disruption to their businesses in the future, the Debtors also seek authority to enter into similar arrangements with SunTrust or other credit providers (the "Additional Agreements") if requested, if no other reasonable alternative is available and the deposit contemplated by the agreement is less than $20,000. To the extent any deposit contemplated by any such Additional Agreement exceeds $20,000, prior to executing any Additional Agreements, the Debtors will provide notice and an opportunity to object to the Office of the United States Trustee for the Eastern District of Virginia and counsel to the official committee of unsecured creditors appointed in these chapter 11 cases (if any). If any party does

[8] The requested deposit amount is part of an agreement reached between the Debtors and BoA to continue both the P-Cards Program and an additional electronic payables programs the Debtors have with BoA.

not consent to the Debtors' entry into an Additional Agreement that provides for a deposit of greater than $20,000, the Debtors reserve the right to seek further relief from the Bankruptcy Court authorizing the Debtors to enter into such Additional Agreement, after notice and a hearing.

**G. Expense Reimbursements.**

26. The Debtors reimburse Employees for certain expenses that such Employees personally incur in the scope of their employment (the "Expense Reimbursements"). Expense Reimbursements typically include expenses associated with travel, lodging, ground transportation, meals, relocation costs, continuing professional education, and other business-related expenses related to the discharge of an Employee's duties. Because these expenses are incurred by Employees through the use of personal funds, the Employees may be held personally liable for any unpaid obligations. Therefore, the Debtors' inability to reimburse these expenses could impose severe hardship on such individuals when the obligations were incurred for the Debtors' benefit.

27. On average, the Debtors pay Expense Reimbursements of approximately $22,000 per month, in the aggregate. Due to the timing of when Employees submit expense reimbursements, it is difficult for the Debtors to precisely estimate the amount of prepetition Expense Reimbursements outstanding at this time. Based on historical practice, however, the Debtors estimate that approximately $32,000 in Expense Reimbursements have accrued but remain unpaid. The Debtors seek authority to pay the Employees' Expense Reimbursements, solely pursuant to the Final Order, and to continue paying the Expense Reimbursements in the ordinary course of the Debtors' business.

## II. Employee Benefit Programs.

### A. Health and Welfare Programs.

28. The Debtors offer an insurance policy to eligible Employees for medical, dental, and vision care coverage and certain other benefits (each as defined herein, and collectively, the "Health and Welfare Programs"), including:

- the Health Insurance Program (as defined below);
- an optional health savings account ("HSA");
- life insurance, disability benefits, and workers' compensation;
- an optional dependent care flexible spending account; and
- a 401(k) Plan.

29. The Debtors seek authority to pay any unpaid amounts due under the Health and Welfare Programs in aggregate total of approximately $23,350 pursuant to the Interim Order and $90,350 pursuant to the Final Order, and to continue the Health and Welfare Programs postpetition in the ordinary course.

#### 1. Health Insurance Programs.

30. The Debtors offer their Employees the opportunity to participate in a number of health benefit plans, including the Medical Plan with an HSA option, the Retiree Supplemental Medical Plan, the Dental Plan, and the Vision Plan (each as defined below, and collectively, the "Health Insurance Programs"). Employees are eligible for the Health Insurance Programs on the first day of the month following their start date.

31. The Debtors offer one medical and prescription drug benefit program (the "Medical Plan") to Employees, which is administered by Independence Blue Cross Preferred Provider Organization ("IBC"). The Debtors pay 100% of each employee's monthly

premium[9] and the plan covers 100% of in-network care after the Employee meets his or her deductible. The Medical Plan operates in conjunction with the HSA allowing Employees to use tax-exempt dollars to meet their annual deductible. The Debtors pay IBC approximately $153,000 monthly for the Medical Plan. Additionally, pursuant to binding contracts with certain retirees, the Debtors offer one supplemental medical insurance plan to certain retirees, which is provided by AmWINS Group Benefits, Inc. (aka NEBCO) (the "Retiree Supplemental Medical Plan"). The Debtors pay approximately $13,000 monthly for this program. The Debtors seek authority, pursuant to the Interim Order and the Final Order, to continue in a manner consistent with historical practice the Retiree Supplemental Medical Plan in the ordinary course of business during the administration of these chapter 11 cases. As of the Petition Date, the Debtors do not believe they owe any amounts with respect to the Medical Plan or the Retiree Supplemental Medical Plan.

32. The Debtors also provide Employees with the option to establish a dependent care flexible spending account (the "FSA"), administered by Payflex, which can be used to cover dependent child and elderly care. Currently, approximately 6 Employees use the FSA, enabling them to use pre-tax dollars for dependent care, for which the Debtors pay an annual fee of $850 in January and a monthly administration fee of approximately $100. The Debtors do not make any contributions to any Employee's FSA. As of the Petition Date, the Debtors do not believe they owe any amounts with respect to the FSA administration obligations.

33. The Debtors also provide dental insurance administered by Delta Dental PPO (the "Dental Plan") and vision insurance through EyeMed (the "Vision Plan,"). The Debtors pay, on average, about $800 per month in administrative fees to Delta Dental on account of the

9 Tobacco smokers not engaged in a tobacco cessation program pay an additional $60 monthly premium.

Dental Plan. In addition the Debtors pay approximately $10,000 on account of Dental Plan claims each month. The Vision Plan is fully insured by EyeMed. The total cost of premiums paid by the Debtors on account of the Vision Plan is approximately $2,000 each month.

34. The Debtors pay approximately $178,900 per month in the aggregate for their contributions and the administrative[10] and premium payments for the Health Insurance Programs. As of the Petition Date, the Debtors estimate they owe approximately $2,750 with respect to the Health Insurance Programs. The Debtors seek authority, pursuant to the Interim Order and the Final Order, to pay in a manner consistent with historical practice any unpaid amounts on account of the Health Insurance Programs and to continue administering the Health Insurance Programs in the ordinary course of business and consistent with past practice.

**2. Insurance, Disability, and Workers' Compensation Programs.**

**a. Life and AD&D Insurance Programs.**

35. The Debtors provide life and accidental death and dismemberment insurance coverage (the "Standard Life and AD&D Insurance") to eligible Employees through MetLife. The Standard Life and AD&D Insurance provides maximum coverage of the lesser of two times annual salary or $500,000 for salaried employees with fewer than ten years of service, and the lesser of two and a half times salary or $500,000 for salaried employees with ten or more years of service, in the event of an Employee's death or dismemberment.

36. Employees may also purchase voluntary life insurance (the "Voluntary Life Insurance") through MetLife, which provides maximum coverage of the lesser of five times the

[10] The Debtors also employ the services of Aon (the "Broker") as a broker in connection with certain of the Health and Welfare Programs. The Broker earns an annual fee of approximately $106,000 for performing this service. This amount is historically paid through commissions on the insurance plans. As of the Petition Date, the Debtors have not paid any amounts on account of the annual fee and do not believe any are owed at this time.

Employees' annual wages or $500,000.00 in the event of death, and in other varying amounts for their spouse and children.[11]

37. Employees may also purchase voluntary accidental death & dismemberment insurance ("Voluntary AD&D" and together with the Standard Life and AD&D Insurance and the Voluntary Life Insurance, the "Life and AD&D Insurance"). Employees electing the Voluntary AD&D may elect up to $300,000 of insurance, and in other varying amounts for their spouse and children.[12] The Debtors are fully insured for all related claims through the Life and AD&D Insurance and the Debtors pay approximately $8,000 per month with respect to their portion of the premiums for the Life and AD&D Insurance.

38. As of the Petition Date, the Debtors do not believe they owe any amounts with respect to the Life and AD&D Insurance. To the extent any amounts become due on account of the Life and AD&D Insurance postpetition, the Debtors request the authority to continue providing the Life and AD&D Insurance in the ordinary course of business and consistent with past practice.

**b. Disability Benefits.**

39. The Debtors provide Employees with short- and long-term disability benefits (the "Disability Benefits"). Under the short-term disability benefits program, Employees are entitled to, among other things, salary continuation in the event of qualified non-work related illness or injury for a continuous period of up to six months (the "Short-Term Disability Benefits"). Under the long-term disability benefits program, Employees are entitled to, among

[11] Employees may purchase Voluntary Life Insurance for spouses in an amount of up to $50,000 and for children in the amount of $10,000.00.

[12] Employees may purchase Voluntary AD&D for spouses of up to 50% of the Employee's coverage and for children of up to 15% of the Employee's coverage, unless the Employee elects coverage for both the spouse and children, in which case the coverage maximum is up to 40% and 10% of the Employee's coverage, respectively.

other things, continuation of 60 percent of their base monthly salary in the event of a qualified, non-work related illness or injury (the "Long-Term Disability Benefits").

40. Employees' Short-Term Disability Benefits begin immediately upon an Employee submitting satisfactory proof of a disabling condition. The Short-Term Disability Benefits continue for a maximum of six months. The Long-Term Disability Benefits begin after an Employee is absent from work for six months and continue for no longer than 36 months. The Short-Term Disability Benefits are paid for by the Debtors and the Long-Term Disability Benefits are fully insured through Reliance Standard Life Insurance Company ("Reliance"). The Debtors pay Reliance approximately $4,060 per month in premiums with respect to the Long-Term Disability Benefits, calculated as $0.32 per $100 of payments.

41. Currently, no Employees receive Disability Benefits and, as of the Petition Date, the Debtors do not believe they owe any amounts on account of the Disability Benefits and associated premiums. To the extent any amounts become due on account of the Disability Benefits postpetition, or any additional Employees become eligible for Disability Benefits postpetition, the Debtors request the authority to continue providing the Disability Benefits in the ordinary course of business and consistent with past practice.

**c. Workers' Compensation Program.**

42. The Debtors maintain a workers' compensation program (the "Workers' Compensation Program") to insure workers against work-related injuries. As of the Petition Date, the Debtors are not aware of any current workers' compensation claims. Regardless, the Debtors maintain an insurance policy with Travelers Insurance to cover any workers' compensation obligations. The Debtors' insurance policy and obligations are discussed in the *Debtors Motion for Entry of Interim and Final Orders Authorizing the Debtors to (i) Continue Insurance Coverage Entered Into Prepetition and Satisfy Prepetition Obligations Related*

*Thereto, (ii) Renew, Amend, Supplement, Extend, or Purchase Insurance Policies, and (iii) Granting Related Relief* filed contemporaneously herewith.

**3. 401(k) Plan.**

43. The Debtors provide all Employees with the ability to participate in a defined contribution employee retirement program (the "401(k) Plan"). Employees are generally eligible to participate in the 401(k) Plan immediately upon hire. The 401(k) Plan generally provides for pre-tax deductions of compensation up to limits set by the Internal Revenue Code, as well as for certain post-tax deductions. Each participating Employee's 401(k) contributions are automatically deducted from each paycheck and transferred to a trust established under the 401(k) Plan (collectively, the "401(k) Deductions"). As of the Petition Date, the Debtors estimate that they are obligated to remit approximately $9,000 on account of the 401(k) Deductions.

44. The Debtors match the Employees' 401(k) Plan contributions on a dollar-for-dollar basis up to the first 6% of the Employees' total annual contribution amount, subject to the IRS Maximum (the "Matching Contributions"). Further, after one year of employment, the Debtors make annual contributions equal to 2% of the Employee's eligible earnings, up to a maximum of $2,500 per employee (the "Annual Contributions," and collectively with the Matching Contributions, the "401(k) Contributions").

45. Under the 401(k) Plan, the 401(k) Contributions are made in cash. The Matching Contributions are made as each Employee contributes to the Employee's 401(k) and the Annual Contributions are made in February on account of Annual Contributions earned during the previous year. Although the exact amount of the Debtors' 401(k) Contributions varies on an annual basis depending on a number of factors, over the last two years the Debtors' annual 401(k) Contributions have averaged approximately $799,000 in the aggregate. In 2016, the

Debtors have already made approximately $240,000 in 401(k) Contributions. As of the Petition Date, the Debtors estimate that they have accrued but unpaid Matching Contributions of approximately $7,000 and accrued but unpaid 401(k) Contributions of approximately $67,000.

46. The 401(k) Plan is currently administered by Merrill Lynch. The Debtors currently incur approximately $13,000 in annual costs, payable in quarterly fees, associated with administering the 401(k) Plan (the "401(k) Administrative Fees"). As of the Petition Date, the Debtors believe that approximately $4,600 has accrued and remains unpaid on account of the 401(k) Administrative Fees.

47. Many Employees' retirement savings solely consist of the 401(k) Plan, and many Employees choose to participate in the 401(k) Plan because of the 401(k) Contributions. Thus, the Debtors believe that continuing the 401(k) Plan and the 401(k) Contributions is essential to maintaining Employee morale and protecting Employee expectations. In addition, the Debtors believe that the 401(k) Deductions are generally held in trust by the Debtors and are not property of their estates.

48. Thus, the Debtors request the authority (a) solely pursuant to the Final Order, to pay the (i) 401(k) Contributions in cash, in their discretion and (ii) the 401(k) Administrative Fees, consistent with their ordinary course practice, and (b) pursuant to both the Interim Order and the Final Order, to transfer the 401(k) Deductions on a pre- or postpetition basis and to continue the 401(k) Plan in the ordinary course of business on a postpetition basis.

**B. Paid Leave.**

49. The Debtors maintain several paid leave benefit programs for Employees, providing paid leave for Vacation Days, Holidays, Sick Days, and Maternity Leave (each as defined below, and together, the "Paid Leave").

50. In the ordinary course of business, the Debtors provide vacation days ("Vacation Days") to the Employees as a Paid Leave benefit. Vacation Days are awarded based on the Employee's years of service reached during the current year, generally ranging from ten Vacation Days for new employees to 25 Vacation Days for Employees with 20+ years with the Debtors. Employees may carry over up to five Vacation Days into the next calendar year but such days must be used by the end of the first quarter. Employees who are terminated or resign are entitled to a cash payment in lieu of the pro rata share of unused Vacation Days, subject to deduction for any amounts owed to the Debtors. The Debtors estimate that, as of the Petition Date, the aggregate amount of earned but unpaid paid time off ("PTO") is approximately $242,000. This amount, however, is not a current cash payment obligation, as Employees are only entitled to cash payment for earned and unused PTO in the event the Employees leave the Debtors' employment.

51. In addition, the Debtors also offer Employees ten paid holidays throughout the year (the "Holidays"). Generally, eligible Employees are not required to work on a designated Holiday and are paid for Holiday time at their base rate of pay.

52. The Debtors also provide hourly Employees with six sick days (the "Sick Days") per year. Sick Days cannot be carried over from one calendar year to the next and Employees are not entitled to be paid on account of unused Sick Days. Salaried Employees are not entitled to a fixed number of Sick Days but a salaried Employee's manager may, at his or her discretion, grant a salaried Employee a sick day at the Employee's request.

53. The Debtors also provide paid maternity leave (the "Maternity Leave") for, generally, six weeks. The Debtors are currently paying one employee on account of Maternity Leave and are aware of one additional upcoming obligation related to Maternity Leave. To the

extent that any Employee exercises her right to take Maternity Leave, the Debtors request the authority to continue paying that Employee's salary in the ordinary course of business and consistent with past practice.

54. The Debtors also permit their Employees to take certain other paid and unpaid leaves of absence for personal reasons, many of which are required by law. The Debtors pay Employees for certain missed work time in the ordinary course of business for bereavement leave or jury duty (the "Other Paid Leave"). Employees are not entitled to any separate cash payments in addition to their normal compensation for the Other Paid Leave. The Debtors also permit Employees to take unpaid leaves of absence for family medical leaves and military leaves (the "Unpaid Leave"). Employees are not entitled to cash payments for unused Unpaid Leave.

55. The Debtors believe that the continuation of the Paid Leave and Unpaid Leave policies in accordance with prior practice is essential to maintaining Employee morale during these chapter 11 cases. Further, the policies are broad-based programs upon which all Employees have come to depend.

56. As a result, the Debtors, pursuant to the Interim Order and the Final Order, seek authority to allow eligible Employees to take Paid Leave and Unpaid Leave in the ordinary course of business on a postpetition basis and to pay any PTO accrued in the ordinary course of business. The Debtors anticipate that their Employees will utilize any accrued Paid Leave in the ordinary course of business, which will not create any material cash flow requirements beyond the Debtors' normal payroll obligations.

**C. Postpetition Non-Employee Director Compensation.**

57. Penn Virginia maintains a board of directors comprised of five non-Employees and one Employee (each, a "Director"). Non-Employee Directors currently receive a $60,000 annual retainer, which is paid on a quarterly basis in cash (the "Annual Retainer"). The

chairman of the board of directors generally receives a $100,000 annual retainer, but that payment is currently suspended until a permanent CEO is named. Historically, Directors received an additional $120,000 annually in common stock or deferred common units. As discussed below, the relevant proportion of this payment was paid in cash in the fourth quarter of 2015 and is expected to be paid in cash going forward. These amounts may be supplemented by additional retainers paid for serving in various leadership roles, such as chairing the Audit Committee (the "Supplemental Retainers").[13] Directors also receive $2,000 for in-person attendance at meetings of the full board of directors, special meetings, and standing committee meetings (the "Additional Fees"). Directors are also entitled to expense reimbursement for out-of-pocket expenses (together with the Annual Retainer, Supplemental Retainers, and Additional Fees, the "Director Compensation"). The exact amount of Director Compensation each year varies depending on a number of factors, including the amount of Additional Fees for each calendar quarter. In the first three quarters of 2015, the Debtors paid non-Employee Directors, in the aggregate, approximately $121,500 per calendar quarter, on account of Director Compensation. As a result of the Amended Director Compensation Policy, as defined below, the Debtors paid non-Employee Directors, in the aggregate, approximately $250,000 in the fourth quarter of 2015, and anticipate that the Debtors will pay non-Employee Directors, in the aggregate, approximately $250,000 per calendar quarter in the future. The Debtors estimate that as of the Petition Date, approximately $108,000 in Director Compensation has accrued but remains unpaid.

58. The Debtors' non-Employee Director Compensation policy provided that the non-Employee Directors receive $120,000 of the Director Compensation in equity based common

[13] The amount of the supplemental retainers ranges from $6,000–$20,000.

stock or deferred common units, but as of the fourth quarter 2015, the Directors have been paid in cash. Effective December 15, 2015, the Debtors amended and restated the original Director Compensation Policy (the "Amended Director Compensation Policy"), to, among other things, provide for payment of Director Compensation in cash only.

59. The Amended Director Compensation Policy does not modify the amount of Director Compensation to which a non-Employee Director may be entitled, only the form of consideration in which it will be paid. The Debtors believe that the non-Employee Directors should be fairly compensated for the fair value of their services rendered to the Debtors during their chapter 11 cases.

60. The Debtors therefore request the authority, solely pursuant to the Final Order and out of an abundance of caution, to pay Director Compensation as it comes due on a postpetition basis in the ordinary course of business and consistent with the Amended Director Compensation Policy.

**D. Vehicle Allowance.**

61. The Debtors also provide a vehicle allowance (the "Vehicle Allowance") to 13 Employees in the regular course of business. This allowance is intended as a benefit of employment historically and currently offered to any Employee with a title of, or more senior than, vice-president. The Vehicle Allowance is paid through payroll in the first pay period of each month. On average, the Debtors spend approximately $19,000 on the Vehicle Allowance on a monthly basis. The Debtors seek authority, pursuant to both the Interim Order and the Final Order, to pay the Vehicle Allowance on a postpetition basis in the ordinary course of business and consistent with past practice.

**E. Charitable Matching Gifts Program.**

62. The Debtors maintain a matching program for Employee contributions to educational institutions and civic, cultural, and medical/science organizations (the "Matching Gifts Program"). For an Employee's first donation to an eligible charity of up to $100 in any given calendar year, the Debtors will match the Employee's contribution on a three-for-one basis. Additional gifts are matched on a one-for-one basis. The total annual matching dollars the Debtors contribute on behalf of any employee is limited to $5,000 per director, $4,000 per officer, and $2,000 per employee. On an annual basis, the Debtors contribute approximately $23,000 as part of the Matching Gifts Program.

63. As of the Petition Date, the Debtors estimate they owe approximately $700 to eligible charities with respect to the Matching Gifts Program (the "Matching Gifts Amounts"). Pursuant to the Interim Order and Final Order, the Debtors seek the authority, but not direction, to pay in a manner consistent with historical practice any unpaid Matching Gifts Amounts and to continue administering the Matching Gifts Program in the ordinary course of business and consistent with past practice.

**F. Severance Program and Non-Insider Bonus Program.**

64. Historically, the Debtors have maintained a severance program in the ordinary course of business for Employees, whereby Employees were paid a certain amount upon termination based on the terminated employee's salary and time of service with the Debtors prior to termination (the "Severance Program").[14] In connection with the restructuring, the Debtors will integrate their severance program with a non-insider bonus program (the "Non-Insider

[14] This was the historic practice for all Employees even though a small number of Employees had executed severance agreements with the Debtors. The Severance Program and the Non-Insider Bonus Program will replace all prepetition severance agreements.

Bonus Program" and, collectively with the Severance Program, the "Programs"). Pursuant to the Severance Program and the Non-Insider Bonus Program, the Debtors will make annual payments of not more than $2.0 million in the aggregate to certain non-insider employees (each, a "Participating Employee") on account of severance or non-insider bonus obligations, as applicable. Specifically, if a Participating Employee is not terminated and does not leave the employ of the Debtors or the post-emergence entities, such Participating Employee will be entitled to certain payments under the Non-Insider Bonus Program. If the Debtors or the post-emergence entity terminate a Participating Employee for any reason other than "cause" on or prior to the date that is six months after the confirmation of the Debtors' chapter 11 plan, such Participating Employee will receive a payment under the Severance Program. For the avoidance of doubt, no such Participating Employee will receive a payment under both the Severance Program and the Non-Insider Bonus Program. Under the Severance Program and Non-Insider Bonus Program, the payment amount of any severance payment will be the greater of (a) up to 13 weeks of base salary and (b) the balance of any non-insider bonus payments owed to the applicable Participating Employee.[15] All payments under the Severance Program and the Non-Insider Bonus Program, in the aggregate, will not exceed $2.0 million annually.

65. The Debtors believe that it is important that they fulfill their obligations under the Severance Program and the Non-Insider Bonus Program to reassure all Employees during the often-challenging postpetition period. Additionally, the Non-Insider Bonus Program is narrowly tailored and reasonably designed to maintain workforce stability in the sensitive transition period after the Debtors' emergence from chapter 11 and to incent achievement of value-maximizing performance metrics, each while honoring the Debtors' ordinary course Severance Program.

[15] As a condition to receiving a severance payment, the Participating Employee will be required to waive all prepetition claims relating to prior employment and compensation arrangements.

Further, as of the Petition Date, the Debtors have one outstanding claim of approximately $385,000 with respect to the Severance Program, but the Debtors do not intend to honor this prepetition claim on a postpetition basis. Any additional payments under the the Severance Program are not due and payable to a Participating Employee until his or her termination and payments under the Non-Insider Bonus Program are payable pursuant to the terms thereof, both during the postpetition period and after emergence. Therefore, the Debtors do not seek to pay any prepetition amounts in connection with the Severance Program or the Non-Insider Bonus Program and only seek authority to honor obligations under the Programs on a postpetition basis, in the ordinary course of business, and up to the aggregate annual amount of $2,000,000, solely upon entry of the Final Order. Importantly, by this request, the Debtors do not seek authority to make any bonus or severance payments to any "insider" as the term is defined in section 101(31) of the Bankruptcy Code. Consequently, the Debtors submit that section 503(c) of the Bankruptcy Code with respect to bonus or severance payments to insiders does not apply to the relief requested herein.

## **Basis for Relief**

### I. Sufficient Cause Exists To Authorize the Debtors To Honor the Employee Compensation and Benefits.

#### A. Certain Employee Compensation and Benefits Are Entitled to Priority Treatment.

66. Sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code entitle certain of the Employee Compensation and Benefits owed to the Employees to priority treatment, to the extent such payments do not exceed $12,850 for each individual as provided for under sections 507(a)(4) and (5) of the Bankruptcy Code. As priority claims, the Debtors are required to pay these claims in full to confirm a chapter 11 plan. *See* 11 U.S.C. § 1129(a)(9)(B) (requiring payment of certain allowed unsecured claims for (a) wages, salaries, or commissions, including

sick leave pay earned by an individual and (b) contributions to an employee benefit plan). Thus, granting the relief sought herein should only affect the timing of certain payments to the Employees, and should not negatively affect recoveries for general unsecured creditors. Indeed, the Debtors submit that payment of the Employee Compensation and Benefits at this time enhances value for the benefit of all interested parties.

### B. Payment of Certain Employee Compensation and Benefits Is Required by Law.

67. The Debtors seek authority to pay the applicable Withholding Obligations to the appropriate third-party entities. These amounts principally represent Employee earnings that governments, Employees, and judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from the Employees' paychecks on another party's behalf. *See* 11 U.S.C. §§ 541(b)(1), (d). Further, federal and state laws require the Debtors to withhold certain tax payments from the Employees' paychecks and to pay such amounts to the appropriate taxing authority. E.g., 26 U.S.C. §§ 6672, 7501(a); *see also City of Farrell v. Sharon Steel Corp.*, 41 F.3d 92, 95–97 (3d Cir. 1994) (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). Because the Withholding Obligations may not be property of the Debtors' estates, the Debtors request that the Court authorize them to transmit the Withholding Obligations on account of the Employees to the proper parties in the ordinary course of business. *See In re Dameron*, 155 F.3d 718, 721 (4th Cir. 1998). The Debtors therefore request that the Court recognize that the Withholding

Obligations are not property of the Debtors' estates and, regardless of whether the Debtors collected the amounts prior to the Petition Date, authorize the Debtors to transmit such monies to the proper parties in the ordinary course of business.

68. Similarly, state laws require the Debtors to maintain the Workers' Compensation Program. If the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Payment of all workers' compensation amounts is therefore crucial to the Debtors' continued operations and the success of the Debtors' ongoing chapter 11 process. The Debtors therefore request that the Court authorize the Debtors to maintain the Workers' Compensation Program.

## II. Payment of the Employee Compensation and Benefits Is Proper Pursuant to Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.

69. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he [debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Under section 363(b), courts require only that the debtor "show that a sound business purpose" justifies the proposed use of property. *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070–71 (2d Cir. 1983) (requiring a "good business reason" to approve a sale pursuant to section 363(b)); *In re W.A. Mallory Co.*, 214 B.R. 834, 836 (Bankr. E.D. Va. 1997) ("This Court follows the 'sound business purpose' test when examining § 363(b) sales.") (citing *In re WBQ P'ship*, 189 B.R. 97, 102 (Bankr. E.D. Va. 1995)). Moreover, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986); *see also In re Tower Air, Inc.*, 416 F.3d 229, 238 (3d Cir.

2005) ("Overcoming the presumptions of the business judgment rule on the merits is a near-Herculean task."). Thus, if a transaction satisfies the business judgment rule, it should be approved under section 363(b) of the Bankruptcy Code.

70. Furthermore, section 105(a) of the Bankruptcy Code codifies the Court's inherent equitable powers to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). This "doctrine of necessity" functions in a chapter 11 case as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code and further supports the relief requested herein. *See In re United Am., Inc.*, 327 B.R. 776, 781 (Bankr. E.D. Va. 2005) (acknowledging the doctrine of necessity "is a necessary deviation because otherwise there will be no reorganization and no creditor will have an opportunity to recoup any part of its pre-petition claim"); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under [section 105(a)] the court can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor."); *see also In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581 (3d Cir. 1981) (holding that a court may authorize payment of prepetition claims if such payment is essential to debtor's continued operation); *In re Just for Feet, Inc.*, 242 B.R. 821, 824–25 (D. Del. 1999) (holding that section 105(a) of the Bankruptcy Code "provides a statutory basis for payment of pre-petition claims" under the doctrine of necessity); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 177 (Bankr. S.D.N.Y. 1983) (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

71. Payment of the Employee Compensation and Benefits is warranted under this authority and the facts of these chapter 11 cases. The majority of the Employees rely exclusively

on the Employee Compensation and Benefits to satisfy their daily living expenses. Consequently, Employees will be exposed to significant financial difficulties if the Debtors are not permitted to honor obligations for unpaid Employee Compensation and Benefits. Additionally, continuing ordinary course benefits will help maintain Employee morale and minimize the adverse effect of the commencement of these chapter 11 cases on the Debtors' ongoing business operations.

72. Moreover, Employees provide the Debtors with services necessary to conduct the Debtors' business operations, and the Debtors believe that absent the payment of the Employee Compensation and Benefits owed to the Employees, the Debtors may experience Employee turnover and instability at this critical time in these chapter 11 cases. The oil and gas industry is a highly specialized business that requires unique technical expertise. The Debtors believe that without these payments, the Employees may become demoralized and unproductive because of the potential significant financial strain and other hardships these Employees may face. Such Employees may then elect to seek alternative employment opportunities. Additionally, a significant portion of the value of the Debtors' business is tied to their workforce, which cannot be replaced without significant efforts—which efforts may not be successful given the overhang of these chapter 11 cases. Enterprise value may be materially impaired to the detriment of all stakeholders in such a scenario. The Debtors therefore believe that payment of the prepetition obligations with respect to the Employee Compensation and Benefits is a necessary and critical element of the Debtors' efforts to preserve value and will give the Debtors the greatest likelihood of retention of their Employees as the Debtors seek to operate their businesses in these chapter 11 cases.

73. Courts in this and other districts have granted similar relief to that requested in this Motion in previous chapter 11 cases. *See, e.g.*, *In re Alpha Natural Resources, Inc.*, No. 15-33896 (KRH) (Bankr. E.D. Va. Aug. 5, 2015); *In re Patriot Coal Corp.*, No. 15-32450 (KLP) (Bankr. E.D. Va. June 4, 2015); *In re James River Coal Co.*, No. 14-31848 (KRH) (Bankr. E.D. Va. May 8, 2014); *In re AMF Bowling Worldwide, Inc.*, No. 12-36495 (KRH) (Bankr. E.D. Va. Dec. 17, 2012); *In re Bear Island Paper Co., L.L.C.*, No. 10-31202 (DOT) (Bankr. E.D. Va. Mar. 25, 2010); *In re Movie Gallery, Inc.*, No. 10-30696 (DOT) (Bankr. E.D. Va. Feb. 3, 2010).[16]

## III. The Severance Program and The Non-Insider Bonus Program Are Appropriate and Comply with all Applicable Law.

74. To the extent that the Severance Program and the Non-Insider Bonus Program incorporate a retention-based component, they do not include "insiders" as that term is defined in section 101(31) of the Bankruptcy Code. Accordingly, the Programs do not implicate section 503(c), which prohibits retention-based incentive programs and severance programs for insiders, with certain exceptions. *See* 11 U.S.C. § 503(c). Moreover, consistent with section 503(c)(3) of the Bankruptcy Code, the Severance Program and Non-Insider Bonus Program are each "justified by the facts and circumstances" of the chapter 11 cases.

### A. The Severance Program and Non-Insider Bonus Program Program are each Permissible Under Section 503(c)(1) of the Bankruptcy Code Because No Participating Employee Is an Insider.

75. Section 503(c)(1) of the Bankruptcy Code does not apply to the Severance Program or the Non-Insider Bonus Program Program because no Participating Employee is an insider. The Debtors identified Employees for participation that were not insiders but performed functions, including accounting, administration, operations, and finance, that are critical to the

16 Because of the voluminous nature of the orders cited herein, individual orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

success of the Debtors' operations and would be difficult to replace during or immediately after the chapter 11 cases. As part of this consideration, the Debtors and their advisors reviewed the factors for who is a "non-insider" as set forth in other cases, including In *re Borders Grp., Inc.*, 453 B.R. 459, 468–70 (Bankr. S.D.N.Y. 2011), and *In re Foothills Texas, Inc.*, 408 B.R. 573, 579 (2009) (Bankr. D. Del. 2009). Based on their analysis of the relevant case law and their consideration of the job responsibilities of each Participating Employee, the Debtors do not believe that any Participating Employee is an "insider" of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code.

**B. The Severance Program and the Non-Insider Bonus Program are each "Justified by the Facts and Circumstances" of the Chapter 11 Cases.**

76. The Debtors believe that implementation of the Severance Program and the Non-Insider Bonus Program constitutes an exercise of the Debtors' business judgment. Pursuant to section 503(c)(3) of the Bankruptcy Code, the Debtors need show only that approval of the programs is "justified by the facts and circumstances" of these chapter 11 cases. This standard is essentially the same as the business judgment standard that is applied under section 363(b) of the Bankruptcy Code. *See In re Velo Holdings Inc.*, 472 B.R. 201, 212 (Bankr. S.D.N.Y. 2012) ("Courts have held that the 'facts and circumstances' language of section 503(c)(3) creates a standard no different than the business judgment standard under section 363(b)."); *In re Global Home Prods. LLC*, 369 B.R. 778, 783 (Bankr. D. Del. 2007) ("If [the proposed plans are] intended to incentivize management, the analysis utilizes the more liberal business judgment review under § 363.").

77. The Severance Program is related to the Non-Insider Bonus Program and will help to ensure a smooth transition into and out of chapter 11. In doing so, the Debtors believe that the Programs satisfy the factors courts generally consider when considering whether non-

insider retention-based bonus payments are justified by the facts and circumstances of a case:[17] The Severance Program and the Non-Insider Bonus Program are reasonably calculated to achieve their desired effect, cost-effective, and the scope of each is fair and reasonable to all Employees. Further, the Debtors submit that they performed the necessary diligence to ensure that the Severance Program and the Non-Insider Bonus Program are necessary and that they sought and utilized the advice of their advisors and industry experts in reaching that conclusion. Accordingly, the Debtors believe that the Severance Program and the Non-Insider Bonus Program are each a valid exercise of their business judgment, justified by the facts and circumstances of the case, and should be allowed in the ordinary course of business, subject to entry of the Final Order.

**IV. A Limited Waiver of the Automatic Stay for Workers' Compensation Program Is Appropriate in this Case.**

78. Section 362(a)(1) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title . . . .

Section 362 of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause." 11 U.S.C. § 362(d)(1).

79. The Debtors seek authorization, under section 362(d) of the Bankruptcy Code, to permit their Employees to proceed with their claims against the Workers' Compensation

[17] Courts consider several factors in determining if a plan is "justified by the facts and circumstances," including: (a) whether the plan is calculated to achieve the desired performance; (b) whether the cost of the plan is reasonable in the context of a debtor's assets, liabilities, and earning potential; (c) whether the scope of the plan is fair and reasonable or discriminates unfairly among employees; (d) whether the debtor performed due diligence in investigating the need for the plan; and (e) whether the debtor received independent counsel in performing due diligence, creating, and authorizing the plan. *In re Global Home Prods. LLC*, 369 B.R. at 786.

Program in the appropriate judicial or administrative forum. The Debtors believe that cause exists to modify the automatic stay because staying the Employees' workers' compensation claims could have a detrimental effect on the financial well-being and morale of the Employees and lead to the departure of certain Employees who are critical at this juncture. Such departures could cause a severe disruption in the Debtors' business to the detriment of all stakeholders. In addition, as noted above, if the Debtors fail to maintain the Workers' Compensation Program, state laws may prohibit the Debtors from operating in those states. Accordingly, the Debtors request a limited waiver of the automatic stay for purposes of allowing the Debtors' Workers' Compensation Program to proceed.

**Processing of Checks and Electronic Fund Transfers Should Be Authorized**

80. The Debtors have sufficient funds to pay the amounts described in this motion in the ordinary course of business by virtue of expected cash flows from ongoing business operations, debtor-in-possession financing, and anticipated access to cash collateral. In addition, under the Debtors' existing cash management system, the Debtors can readily identify checks or wire transfer requests as relating to an authorized payment in respect of the Employee Compensation and Benefits, as applicable. Accordingly, the Debtors believe that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently. Therefore, the Debtors respectfully request that the Court authorize all applicable financial institutions, when requested by the Debtors, to receive, process, honor, and pay any and all checks or wire transfer requests in respect of the relief requested in this motion.

**The Requirements of Bankruptcy Rule 6003 Are Satisfied**

81. Bankruptcy Rule 6003 empowers a court to grant relief within the first 21 days after the Petition Date "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003. For the reasons discussed above, authorizing the Debtors to pay

the Employee Compensation and Benefits and granting the other relief requested herein is integral to the Debtors' ability to transition their operations into these chapter 11 cases. Failure to receive such authorization and other relief during the first 21 days of these chapter 11 cases would severely disrupt the Debtors' operations at this critical juncture. For the reasons discussed herein, the relief requested is necessary in order for the Debtors to operate their businesses in the ordinary course and preserve the ongoing value of the Debtors' operations and maximize the value of their estates for the benefit of all stakeholders. Accordingly, the Debtors submit that they have satisfied the "immediate and irreparable harm" standard of Bankruptcy Rule 6003 to support granting the relief requested herein.

**Reservation of Rights**

82. Nothing contained in this motion or any actions taken by the Debtors pursuant to relief granted in the Interim Order and Final Order is intended or should be construed as: (a) an admission as to the validity of any particular claim against a Debtor entity; (b) a waiver of the Debtors' rights to dispute any particular claim on any grounds; (c) a promise or requirement to pay any particular claim; (d) an implication or admission that any particular claim is of a type specified or defined in this motion; (e) a request or authorization to assume any agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to this motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens. If the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any particular claim or a waiver of the Debtors' rights to subsequently dispute such claim.

**Waiver of Bankruptcy Rule 6004(a) and 6004(h)**

83. To successfully implement the foregoing, the Debtors request that the Court enter an order providing that notice of the relief requested herein satisfies Bankruptcy Rule 6004(a) and that the Debtors have established cause to exclude such relief from the 14-day stay period under Bankruptcy Rule 6004(h).

**Waiver of Memorandum of Points and Authorities**

84. The Debtors respectfully request that this Court treat this Motion as a written memorandum of points and authorities or waive any requirement that this Motion be accompanied by a written memorandum of points and authorities as described in Local Bankruptcy Rule 9013-1(G).

**Notice**

85. The Debtors will provide notice of this motion to: (a) the Office of the United States Trustee for the Eastern District of Virginia; (b) the holders of the 50 largest unsecured claims against the Debtors (on a consolidated basis); (c) the administrative agent under the Debtors' prepetition secured credit agreement; (d) the indenture trustee under the Debtors' 7.25% senior notes due 2019; (e) the indenture trustee under the Debtors' 8.500% senior notes due 2020; (f) counsel to certain holders of the 2019 and 2020 senior notes; (g) counsel to the agent under the Debtors' debtor-in-possession credit facility; (h) co-counsel to the agent under the Debtors' debtor-in-possession credit facility (i) the United States Attorney's Office for the Eastern District of Virginia and for the states in which the Debtors operate; (j) the Internal Revenue Service; (k) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (l) the office of the attorneys general for the states in which the Debtors operate; (m) the Securities and Exchange Commission; and

(n) any party that has requested notice pursuant to Bankruptcy Rule 2002. The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

**No Prior Request**

86. No prior motion for the relief requested herein has been made to this or any other court.

[*Remainder of page intentionally left blank*]

WHEREFORE, the Debtors respectfully request that the Court enter the Interim Order and Final Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Dated: May 12, 2016
Richmond, Virginia

/s/ *Michael A. Condyles*
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192
Michael.Condyles@KutakRock.com
Peter.Barrett@KutakRock.com
Jeremy.Williams@KutakRock.com

Edward O. Sassower, P.C. (*pro hac vice* admission pending)
Joshua A. Sussberg, P.C.
Brian E. Schartz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900
edward.sassower@kirkland.com
joshua.sussberg@kirkland.com
brian.schartz@kirkland.com

- and -

James H.M. Sprayregen, P.C.
Justin R. Bernbrock (*pro hac vice* admission pending)
Benjamin M. Rhode (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200
james.sprayregen@kirkland.com
justin.bernbrock@kirkland.com
benjamin.rhode@kirkland.com

*Proposed Co-Counsel to the Debtors and Debtors in Possession*

# <u>EXHIBIT A</u>

**Proposed Interim Order**

Edward O. Sassower, P.C. (*pro hac vice* admission pending)
Joshua A. Sussberg, P.C.
Brian E. Schartz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Justin R. Bernbrock (*pro hac vice* admission pending)
Benjamin M. Rhode (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Co-Counsel to the Debtors*

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| PENN VIRGINIA CORPORATION, *et al.*,[1] | ) | Case No. 16-32395 (___) |
| Debtors. | ) | (Joint Administration Requested) |

**INTERIM ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"),

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Penn Virginia Corporation (4320); Penn Virginia Holding Corp. (7384); Penn Virginia MC Corporation (0458); Penn Virginia MC Energy L.L.C. (0462); Penn Virginia MC Operating Company L.L.C. (0466); Penn Virginia Oil & Gas Corporation (7929); Penn Virginia Oil & Gas GP LLC (3686); Penn Virginia Oil & Gas LP LLC (8109); Penn Virginia Oil & Gas, L.P. (9487). The location of the Debtors' service address is: Four Radnor Corporate Center, Suite 200, 100 Matsonford Road, Radnor, Pennsylvania 19087.

(a) authorizing the Debtors (i) to pay prepetition wages, salaries, other compensation, and reimbursable expenses and (ii) to continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, (b) scheduling a final hearing to consider approval of the Motion on a final basis, and (c) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on an interim basis as set forth herein.

2. The final hearing (the "Final Hearing") on the Motion shall be held in the United States Bankruptcy Court, Courtroom ______, 701 East Broad Street, Richmond, Virginia 23219 on _________, 2016, at__:__ _.m., prevailing Eastern Time. Any objections or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

Time, on _________, 2016, and shall be served on: (a) the Debtors, Penn Virginia Corporation, Four Radnor Corporate Center, Suite 200, 100 Matsonford Road, Radnor, Pennsylvania 19087, Attn: General Counsel; (b) proposed counsel to the Debtors, Kirkland & Ellis LLP, 601 Lexington Avenue, New York, New York 10022, Attn: Brian E. Schartz, and Kirkland & Ellis LLP, 300 North LaSalle, Chicago, Illinois 60654, Attn: Justin R. Bernbrock and Benjamin M. Rhode; (c) proposed co-counsel to the Debtors, Kutak Rock LLP, Bank of America Center, 1111 East Main Street, Suite 800, Richmond, Virginia 23219, Attn: Michael A. Condyles, Peter J. Barrett, and Jeremy S. Williams; (d) the administrative agent under the Debtors' prepetition secured credit agreement; (e) the indenture trustee under the Debtors' 7.25% senior notes due 2019; (f) the indenture trustee under the Debtors' 8.500% senior notes due 2020; (g) counsel to certain holders of the 2019 and 2020 senior notes; (h) counsel to the Ad Hoc Committee of Noteholders, Milbank Tweed Hadley & McCloy, 28 Liberty Street, New York, New York 10005, Samuel Khalil, Brian Kinney, and Bradley Friedman; (i) counsel to the agent under the Debtors' debtor-in-possession credit facility, Bracewell LLP, 711 Louisiana Street, Suite 2300, Houston, Texas 77002, Attn: Stephanie Song and Kurt Mayr; (j) co-counsel to the agent under the Debtors' debtor-in-possession credit facility, McGuireWoods LLP, 800 East Canal Street, Richmond, Virginia 23219, Attn: Dion W. Hayes and Sarah B. Boehm; (k) counsel to any statutory committee appointed in these cases; and (l) the Office of The United States Trustee, 701 East Broad Street, Suite 4304, Richmond, Virginia 23219, Attn: Robert Van Arsdale, Esq., and 210 First Street, Suite 505, Roanoke, Virginia 24011, Attn: Webb King, Esq. In the event no objections to entry of a final order on the Motion are timely received, this Court may enter such final order without need for the Final Hearing.

3. The Debtors are authorized, but not directed, to continue, modify, change, and discontinue the Employee Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law and as set forth herein. For the avoidance of doubt, except as otherwise expressly set forth herein, nothing in this Order should be construed as authorizing any payments on account of the Employee Compensation and Benefits that are outside the ordinary course of business without prior Court approval.

4. The Debtors are authorized, but not directed, in their discretion, to pay and honor prepetition amounts related to the Employee Compensation and Benefits programs in an aggregate interim amount not to exceed $589,452; *provided* that pending entry of the Final Order, the Debtors are not authorized to honor obligations for Expense Reimbursements, the 401(k) Contributions, the Severance Program, the Non-Insider Bonus Program, or the Director Compensation; *provided further* that pending entry of the Final Order, the Debtors are not authorized to pay any Employee, Independent Contractor, or Temporary Staff any amount on behalf of prepetition services that exceeds the amounts set forth in sections 507(a)(4) and 507(a)(5) of the Bankruptcy Code; *provided further* that the Debtors' authority to pay such prepetition amounts pursuant to this paragraph shall, where applicable, be subject to the following caps:

| Employee Obligation | Interim Amount |
|---|---|
| Unpaid Wages | $161,000 |
| Unpaid Contractor Amounts | $48,000 |
| Deductions | $402 |
| Unpaid Payroll Taxes | $56,000 |
| Payroll Fees | $0 |
| Retiree Compensation | $0 |
| Corporate Credit Card Balances | $58,000 |
| Expense Reimbursements | $0 |
| Health Insurance Programs | $2,750 |

| Employee Obligation | Interim Amount |
|---|---|
| Life and AD&D Insurance | $0 |
| Disability Benefits | $0 |
| 401(k) Plan | $20,600 |
| Paid Leave[3] | $242,000 |
| Director Compensation | $0 |
| Vehicle Allowance | $0 |
| Matching Gifts Amounts | $700 |
| Severance Program and Non-Insider Bonus Program | $0 |
| **Total** | **$589,452** |

5. Nothing herein shall be deemed to (a) authorize the payment of any amounts in satisfaction of severance obligations, or which are subject to section 503(c) of the Bankruptcy Code or (b) authorize the Debtors to cash out unpaid Vacation Days or leave time upon termination of an Employee, unless applicable state law requires such payment; *provided* that nothing in this Interim Order shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

6. Pursuant to Section 362(d) of the Bankruptcy Code: (a) Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to pay all prepetition amounts relating thereto in the ordinary course of business; and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program. Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

[3] The Paid Leave obligation only requires cash payment with respect to each Employee's owed Paid Leave when an Employee is terminated.

7. Notwithstanding the relief granted in this Interim Order and any actions taken pursuant to such relief, nothing in this Interim Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified or defined in this Interim Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserve their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

8. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Interim Order.

9. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits.

10. Notwithstanding anything to the contrary set forth herein, (a) any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the

Debtors under the Debtors' postpetition financing agreements (the "DIP Documents") and any orders approving the DIP Documents and governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating thereto) and (b) to the extent there is any inconsistency between the terms of such orders approving the DIP Documents or the Debtors' use of cash collateral and any action taken or proposed to be taken hereunder, the terms of such orders approving the DIP Documents and use of cash collateral shall control.

11. The contents of the Motion satisfy the requirements of Bankruptcy Rule 6003(b).

12. The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is waived.

13. Notice of the Motion as provided therein is good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

14. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Interim Order are immediately effective and enforceable upon its entry.

15. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Interim Order in accordance with the Motion.

16. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

Richmond, Virginia

____________________________________
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

/s/ *Michael A. Condyles*

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

- and -

Edward O. Sassower, P.C. (*pro hac vice* admission pending)
Joshua A. Sussberg, P.C.
Brian E. Schartz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Justin R. Bernbrock (*pro hac vice* admission pending)
Benjamin M. Rhode (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Co-Counsel to the Debtors*

**CERTIFICATION OF ENDORSEMENT**
**UNDER LOCAL BANKRUPTCY RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ *Michael A. Condyles*

# EXHIBIT B

## Proposed Final Order

Edward O. Sassower, P.C. (*pro hac vice* admission pending)
Joshua A. Sussberg, P.C.
Brian E. Schartz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Justin R. Bernbrock (*pro hac vice* admission pending)
Benjamin M. Rhode (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

*Proposed Co-Counsel to the Debtors*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**RICHMOND DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| PENN VIRGINIA CORPORATION, *et al.*,[1] | ) | Case No. 16-32395 (___) |
| Debtors. | ) | (Joint Administration Requested) |

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO (A) PAY PREPETITION WAGES, SALARIES, OTHER COMPENSATION, AND REIMBURSABLE EXPENSES AND (B) CONTINUE EMPLOYEE BENEFITS PROGRAMS, AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of a final order (this "Final Order"),

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, include: Penn Virginia Corporation (4320); Penn Virginia Holding Corp. (7384); Penn Virginia MC Corporation (0458); Penn Virginia MC Energy L.L.C. (0462); Penn Virginia MC Operating Company L.L.C. (0466); Penn Virginia Oil & Gas Corporation (7929); Penn Virginia Oil & Gas GP LLC (3686); Penn Virginia Oil & Gas LP LLC (8109); Penn Virginia Oil & Gas, L.P. (9487). The location of the Debtors' service address is: Four Radnor Corporate Center, Suite 200, 100 Matsonford Road, Radnor, Pennsylvania 19087.

(a) authorizing the Debtors (i) to pay prepetition wages, salaries, other compensation, and reimbursable expenses and (ii) to continue employee benefits programs in the ordinary course of business, including payment of certain prepetition obligations related thereto, and (b) granting related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334; and this Court having found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and that this Court may enter a final order consistent with Article III of the United States Constitution; and it appearing that venue of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on the Motion were appropriate under the circumstances and no other notice need be provided; and this Court having reviewed the Motion and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT:

1. The Motion is granted on a final basis as set forth herein.

2. The Debtors are authorized, but not directed, to continue and/or modify, change, and discontinue the Employee Compensation and Benefits and to implement new programs, policies, and benefits, in the ordinary course of business during these chapter 11 cases and without the need for further Court approval, subject to applicable law. For the avoidance of doubt, except as otherwise expressly set forth herein, nothing in this Order should be construed

[2] Capitalized terms used but not otherwise defined herein have the meanings ascribed to them in the Motion.

as authorizing any payments on account of the Employee Compensation and Benefits that are outside the ordinary course of business without prior Court approval.

3. The Debtors are authorized, but not directed, in their discretion, to pay and honor prepetition amounts related to the Employee Compensation and Benefits programs in an aggregate final amount not to exceed $2,796,452; *provided that* the Debtors may pay amounts in excess of this figure if such amounts would otherwise be payable pursuant to the terms of this Final Order and after providing notice of such proposed payments to the office of the United States Trustee for the Eastern District of Virginia.

4. The Debtors are authorized, but not directed, to enter into Additional Agreements with other providers credit, as needed, that provide for deposits of no greater than $20,000

5. The Debtors are authorized, but not directed, to enter into Additional Agreements with other providers of corporate credit cards, as needed, that provide for deposits of greater than $20,000; *provided that* at least five business days prior to the execution and delivery of any documents or instruments related to such Additional Agreements, the Debtors provide written notice of the terms of such Additional Agreements to: (i) the Office of the United States Trustee for the Eastern District of Virginia and (ii) counsel to the official committee of unsecured creditors. If any of the Notice Parties properly and timely objects to the Debtors' entry into any such Additional Agreements within five business days after the date of delivery of the notice of such Additional Agreements, and the Debtors, in their discretion, still desire to enter into the Additional Agreements, the execution of such Additional Agreements may not proceed except (a) upon resolution of the objection by the parties in question or (b) upon approval by the Court after notice and a hearing.

6. The Debtors are authorized to honor obligations arising in connection with the Severance Program and implement the Non-Insider Bonus Program on a postpetition basis; provided, however, that the Debtors shall only be authorized to pay up to $2,000,000 per year, in the aggregate, on account of the Programs.

7. Nothing herein shall be deemed to authorize the payment of any amounts which violates or implicates section 503(c) of the Bankruptcy Code; *provided* that nothing herein shall prejudice the Debtors' ability to seek approval of relief pursuant to section 503(c) of the Bankruptcy Code at a later time.

8. Pursuant to Section 362(d) of the Bankruptcy Code: (a) Employees are authorized to proceed with their workers' compensation claims in the appropriate judicial or administrative forum under the Workers' Compensation Program, and the Debtors are authorized to pay all prepetition amounts relating thereto in the ordinary course of business; and (b) the notice requirements pursuant to Bankruptcy Rule 4001(d) with respect to clause (a) are waived. This modification of the automatic stay pertains solely to claims under the Workers' Compensation Program and any such claims must be pursued in accordance with the applicable Workers' Compensation Program. Payment on account of any recoveries obtained in connection with a claim brought pursuant to this paragraph is limited to the terms and conditions of the applicable Workers' Compensation Program, including with regard to any policy limits or caps.

9. Notwithstanding the relief granted in this Final Order and any actions taken pursuant to such relief, nothing in this Final Order shall be deemed: (a) an admission as to the validity of any prepetition claim against a Debtor entity; (b) a waiver of the Debtors' right to dispute any prepetition claim on any grounds; (c) a promise or requirement to pay any prepetition claim; (d) an implication or admission that any particular claim is of a type specified

or defined in this Final Order or the Motion; (e) a request or authorization to assume any prepetition agreement, contract, or lease pursuant to section 365 of the Bankruptcy Code; (f) a waiver or limitation of the Debtors' rights under the Bankruptcy Code or any other applicable law; or (g) a concession by the Debtors that any liens (contractual, common law, statutory, or otherwise) satisfied pursuant to the Motion are valid, and the Debtors expressly reserved their rights to contest the extent, validity, or perfection or seek avoidance of all such liens.

10. The banks and financial institutions on which checks were drawn or electronic payment requests made in payment of the prepetition obligations approved herein are authorized to receive, process, honor, and pay all such checks and electronic payment requests when presented for payment, and all such banks and financial institutions are authorized to rely on the Debtors' designation of any particular check or electronic payment request as approved by this Final Order.

11. The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests that are dishonored as a consequence of these chapter 11 cases with respect to prepetition amounts owed in connection with any Employee Compensation and Benefits.

12. Notwithstanding anything to the contrary set forth herein, (a) any payment to be made, or authorization contained, hereunder shall be subject to the requirements imposed on the Debtors under the Debtors' postpetition financing agreements (the "DIP Documents") and any orders approving the DIP Documents and governing the Debtors' use of cash collateral (including with respect to any budgets governing or relating thereto) and (b) to the extent there is any inconsistency between the terms of such orders approving the DIP Documents or the Debtors' use of cash collateral and any action taken or proposed to be taken hereunder, the terms

of such orders approving the DIP Documents and use of cash collateral shall control.

13. The requirement under Local Bankruptcy Rule 9013-1(G) to file a memorandum of law in connection with the Motion is waived.

14. Notice of the Motion as provided therein is good and sufficient notice of such Motion and the requirements of Bankruptcy Rule 6004(a) and the Local Bankruptcy Rules are satisfied by such notice.

15. Notwithstanding Bankruptcy Rule 6004(h), the terms and conditions of this Final Order are immediately effective and enforceable upon its entry.

16. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

17. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Richmond, Virginia

____________________________________
UNITED STATES BANKRUPTCY JUDGE

WE ASK FOR THIS:

/s/ *Michael A. Condyles*
Michael A. Condyles (VA 27807)
Peter J. Barrett (VA 46179)
Jeremy S. Williams (VA 77469)
**KUTAK ROCK LLP**
Bank of America Center
1111 East Main Street, Suite 800
Richmond, Virginia 23219
Telephone: (804) 644-1700
Facsimile: (804) 783-6192

- and -

Edward O. Sassower, P.C. (*pro hac vice* admission pending)
Joshua A. Sussberg, P.C.
Brian E. Schartz (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

- and -

James H.M. Sprayregen, P.C.
Justin R. Bernbrock (*pro hac vice* admission pending)
Benjamin M. Rhode (*pro hac vice* admission pending)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone: (312) 862-2000
Facsimile: (312) 862-2200

*Proposed Co-Counsel to the Debtors*

**CERTIFICATION OF ENDORSEMENT**
**UNDER LOCAL BANKRUPTCY RULE 9022-1(C)**

Pursuant to Local Bankruptcy Rule 9022-1(C), I hereby certify that the foregoing proposed order has been endorsed by or served upon all necessary parties.

/s/ *Michael A. Condyles*